UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

| | |
|---|---|
| In re VICKIE LYNETTE WILLIAMS, | Chapter 7 |
| Debtor. | No. 14-10838-MEW |

--------------------------------------------------------x

| | |
|---|---|
| NAT VAUGHN, | |
| Appellant, | Adv. Proc. No. 15-1103-MEW |
| -v- | No.  15CV5766-LTS |
| VICKIE LYNETTE WILLIAMS, | |
| Appellee. | |

--------------------------------------------------------x

<u>M</u>EMORANDUM <u>O</u>PINION <u>A</u>ND <u>O</u>RDER

Appellant Nat Vaughn ("Vaughn" or "Appellant") appeals from the July 15, 2015, Order Granting Debtor a Discharge and Overruling Objections to the Dischargeability of a Debt (Docket Entry No. 16 at ECF pp. 57-58, the "Order") entered by United States Bankruptcy Judge Michael E. Wiles in the above-captioned bankruptcy case and adversary proceeding.  For the reasons set forth in an accompanying Memorandum Decision following a trial, the Order granted debtor Vickie Lynette Williams ("Debtor," or "Williams") a discharge of her debt and overruled Appellant's objections to dischargeability of the debt.  (<u>See</u> Docket Entry No. 1; <u>see also</u> Docket Entry No. 16, ECF pp. 59-78 ("Wiles Op.").)  The Court has jurisdiction of this appeal pursuant to 28 U.S.C. §§ 158 and 1331.

Vaughn filed his appeal, which is unopposed, on July 22, 2015.[1]  On October 30, 2015, the Court held an initial pretrial conference at which Vaughn was present.  Because Williams has not appeared, the facts and legal arguments are adequately presented in the briefs and record, and the Court's decisional process would not be significantly aided by oral argument, the Court has determined that oral argument is not necessary and has taken the matter on submission.  See Fed. R. Bankr. P. 8109.  The Court has considered Vaughn's submissions carefully.  For the reasons stated herein, Judge Wiles' July 15, 2015, Order Granting Debtor a Discharge and Overruling Objections to the Dischargeability of a Debt is affirmed and Williams' appeal is dismissed.

BACKGROUND[2]

Factual History

Debtor Vicki Lynette Williams is a hairstylist who formerly operated a business under the name Victoria Strands, Inc.  (Wiles Op. at ECF p. 64.)  She was a tenant of two rental units in the same building on Manhattan's Upper West Side: 2F, a commercial space out of

---

[1]   Although in the "Conclusion" section of his appellate brief, Vaughn claims to be seeking limited relief (i.e., that the Court "remand[] this matter for the limited purpose of further hearing on the factual issue of whether the Appellee with the benefit of a legal representative did in fact fail to disclose her true earnings during the year 2014 as a freelance cosmologist [sic]"), his "Statement of Issues on Appeal," filed pursuant to Federal Rule of Bankruptcy Procedure 8009, attacks Judge Wiles' ruling more broadly and requests that "the United States District Court of Appeals [sic] reconsider Bankruptcy Judge Wile [sic] dismissal and denial of the Appellant [sic] declared claims."  (See Docket Entry No. 16 at ECF pp. 1-10 ("App. Br."); see also Docket Entry No. 6, Amended Statement of Issues on Appeal ("Statement of Issues").)  The Court, accordingly, reviews the challenged decisions.

[2]   The facts recited herein are drawn from Judge Wiles' Memorandum Decision and have been reviewed for clear error.  Citations to Plaintiff's exhibits in the record are indicated by the designation "PX."

which she operated her business, and 3R, her residence.  (Wiles Op. at ECF p. 64.)  When her business went into decline, Williams found herself unable to pay her rent and, in the summer of 2013, her landlord commenced non-payment proceedings against her.  (Id.)  On November 23, 2013, Williams commenced an action in New York Supreme Court against her landlord for $500,000 based on, inter alia, breach of contract and negligence relating to water damage and mold issues.[3]  (Id.)  On March 5, 2014, Williams entered into two stipulations of settlement with respect to the non-payment proceedings against her.  (Id.)  The first required her to vacate unit 2F in March 2014, and the second adjourned the matter with respect to unit 3R to a later date.  (Id.)

On September 24, 2014, Williams received a $5,000 loan from Appellant Vaughn to assist in the payment of her rent arrearage.  (See id. at ECF p. 63.)  That same day, Williams signed a loan agreement in which she agreed to repay Vaughn the $5,000 within 30 days.  (See id. at ECF p. 62; PX. A.)  The agreement further provided that, if Williams failed to repay the loan within 30 days, Vaughn would be permitted to withdraw the unpaid balance from her Chase bank account.  (Id.)  Prior to entering into this agreement, Williams discussed aspects of her business with Vaughn and he visited the business' location; no evidence was offered at trial demonstrating that Williams made any written representations with respect to her financial condition or that of her business.  (Id. at ECF p. 64.)  At trial, Williams testified that Vaughn deposited the loan funds directly into her bank account using account information that she had provided.  (Id. at ECF p. 63; PX A-1.)  The parties agreed that, when the loan came due on October 24, 2012, Williams offered only to pay $1,000 of the amount that she owed, which

---

[3]  At the time Williams filed her bankruptcy petition, the action against her landlord was pending and was listed on her Schedule B as having an unknown value.  (Wiles Op. at ECF p. 64.)

Vaughn accepted under protest. (Wiles Op. at ECF p. 63.) At trial, Vaughn asserted that Williams indicated that she would pay the remaining balance two days later. (Id.) Williams claimed that she assured Vaughn that she would repay as soon as possible and that, after she did not do so immediately, he commenced state court proceedings against her. (Wiles Op. at ECF p. 63.)

In the state court proceedings, the parties engaged in mediation, during which Williams offered to pay Vaughn in $200 monthly installments. (Id.) Vaughn rejected this proposal. (Id.) Ultimately, a judgment was issued against Williams on March 28, 2013, by the Small Claims part of the Civil Court of the City of New York in the amount of $4,204.50. (Id. at ECF p. 60.)

On March 27, 2014, Williams filed a petition under chapter 13 of the Bankruptcy Code.[4] (Wiles Op. at ECF p. 60; See also S.D.N.Y. Bankr. Case No. 14-10838.) On April 8, 2014, Vaughn filed a proof of claim in Williams' case in the amount of the judgment he held against her and her business, $4,204.50. (Wiles Op. at ECF p. 60.) On September 29, 2014, at Williams' request, the case was converted to one under chapter 7, and a chapter 7 trustee was appointed. (Id.) Notice of the chapter 7 case and the scheduling of a meeting of creditors was

---

[4] On her petition, Williams listed a property located in New Jersey – a former residence valued at $291,307 – and indicated that the secured claim against the property exceeded its value. (See Wiles Op. at ECF p. 65.) Williams is listed on the deed to the property with her ex-husband. (Id.) The mortgage on the property, which is dated March 20, 2012, was signed by both Williams and her ex-husband. (Id.) A promissory note dated March 20, 2012, states that the "Borrower" – defined therein as Williams and her ex-husband – owes the lender $343,500. (Id.) This note was not offered as evidence; instead, Williams provided a copy of a Bank of America home loan account statement, addressed solely to her ex-husband. (Id.) Judges Wiles found that, whether the property was correctly valued at $291,307 as set forth in Williams' Schedule B, or the $150,000 appraisal value, Williams had no equity in the property. (Id. at ECF p. 66.)

provided to Vaughn, who was served by first class mail on October 10, 2014. (Wiles Op. at ECF p. 60.) On December 30, 2014, Vaughn filed a submission entitled "Objection to the Debtor's Discharge of the Unsecured Debt," which the court deemed an application to deny Williams a discharge or to declare Vaughn's debt nondischargeable. (Id. at ECF pp. 60-61.) At a conference before the bankruptcy court on March 19, 2015, Vaughn was informed that his submission would be construed as a timely-filed adversary proceeding and he was cautioned as to the standards that he would have to meet in order to sustain his objections. (Id. at ECF p. 61.) On April 3, 2015, Williams filed an objection to the relief sought by Vaughn. (Id.) A further pre-trial conference was held on April 9, 2015, at which Vaughn was again informed of the standards that applied to his challenge to the discharge of Williams' debt. (Id.)

On May 1, 2015, Vaughn filed a complaint seeking: (1) to have his claim "declared to be a valid and allowed claim in this case,"; and (2) to have that claim "declared to be [a] non-dischargeable debt pursuant to, inter alia, § 523(a)(2) and (6) of the Bankruptcy Code."[5] (Wiles Op. at ECF pp. 61-62; see also ECF Docket Entry No. 16 at ECF pp. 12-25 ("Complaint").) Vaughn further alleged substantial abuse of the Bankruptcy Code by Williams pursuant to Section 707(b) of the code. (Id. at ECF pp. 62, 73-74.) Judge Wiles also read Vaughn's Complaint to allege that Williams' concealed information from, and gave false testimony to, the chapter 7 trustee, presumably raising a claim under Section 727 of the Bankruptcy Code. (See id. at ECF pp. 62, 74-77.)

Judge Wiles held a final pre-trial conference on May 19, 2015. (Id. at ECF p. 62.) Trial commenced on June 17, 2015, and continued and was concluded on June 29, 2015. (Wiles

---

[5] Vaughn sought an award of $4,652.52, the amount that Williams attributed to his claim in the schedule for non-priority unsecured claims in her petition. (Wiles Op. at ECF p. 62.)

Op. at ECF p. 62.)  Both Vaughn and Williams testified and presented evidence at trial.  (See

generally Wiles Op.)  Judge Wiles thereafter issued both his Memorandum Decision and Order

on July 15, 2015 (see Wiles Op. at ECF pp. 58, 78), denying Vaughn's requests for a declaration

that Williams' debt to him was non-dischargeable as well as his request that Williams be denied

a discharge under Section 727 of the Bankruptcy Code.  (Id. at ECF pp. 77-78.)  Vaughn filed his

notice of appeal with this Court on July 22, 2015.  (See Docket Entry No. 1.)

DISCUSSION

Standard of Review

        Federal district courts have jurisdiction to hear appeals from final judgments,

orders and decrees of bankruptcy judges.  See Fed. R. Bankr. P. 8013; see also In re Santiago-

Monteverde, 512 B.R. 432, 436 (S.D.N.Y. 2014) ("On appeal, the court may affirm, modify, or

reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further

proceedings") (internal quotation marks and citation omitted).  The standard of review in a

bankruptcy appeal is plenary.  See In re MarketXT Holdings Corp., 346 F. App'x 744, 745 (2d

Cir. 2009).  A district court "review[s] the bankruptcy court decision independently, accepting

its factual findings unless clearly erroneous but reviewing its conclusions of law de novo."  Ball

v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (quoting In re Enron Corp., 419 F.3d 115,

124 (2d Cir.2005)).  Evidentiary determinations made by the bankruptcy court are reviewed for

abuse of discretion.  See Ball, 451 F.3d at 69 (citing In re Croton River Club, Inc., 52 F.3d 41, 45

n.2 (2d Cir.1995)).

Analysis

Appellant Vaughn, appearing pro se, has filed both a brief in support of his appeal, and an amended statement of issues on appeal. Neither of these documents offers substantive legal argument; rather, Appellant makes only conclusory statements attacking Judge Wiles' legal and factual determinations. The Court examines each of Appellant's points in turn.

*A. Denial of Discharge Pursuant to Bankruptcy Code Section 727*

In his brief, Appellant claims that "Bankruptcy Judge Wiles erred when he actually rewarded the Discharge of Debtor pursuant to § 727 of title 11, United States Bankruptcy Code." (See App. Br. at ECF p. 9.) This claim appears to correlate with Judge Wiles' analysis under Sections 727(a)(2) and (4)(a) of the Bankruptcy code. (See Wiles Op. at ECF pp. 74-77.) Section 727 generally allows for "a blanket prohibition of a debtor's discharge, thereby protecting the debts owed to all creditors." See In re Chalasani, 92 F.3d 1300, 1309 (2d Cir. 1996). Section 727(a) permits the court to grant the debtor a discharge unless "(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -- (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." See 11 U.S.C.S. § 727(a)(2) (LexisNexis 2010). Section 727(a)(4)(a) prohibits granting a discharge of debt when "the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account." See 11 U.S.C.S. § 727(a)(4)(a) (LexisNexis 2010). Appellant appears to contend that the Debtor concealed information concerning mortgage debt on the New Jersey property from the chapter 7 trustee; that she failed to disclose that her company owed a balance of over $3,500 to the Daily

News; and that she provided false information about her eviction from unit 2F.

Judge Wiles' made findings of fact with respect to each of Vaughn's contentions, and Vaughn has failed to demonstrate that any of these findings is clearly erroneous. With respect to the mortgage issue, Judge Wiles' credited Williams' testimony at trial that she was required to sign the mortgage because her name was on the deed but that she was not responsible for mortgage payments and that, when she tried to call the bank holding the mortgage to get more information on the mortgage, the bank refused to provide her with any because her ex-husband was solely responsible for the debt. (See Wiles Op. at ECF p. 75.) Judge Wiles further accepted Williams' testimony that she did not intend to mislead anyone, that the mortgage company required her to sign the mortgage because her name was on the deed to the property, but that she did not sign any documents that would have made her responsible for the loan. (See id.) In addition, the schedules filed by Williams reference both the New Jersey property and the mortgage and do not conceal them. Thus, Judge Wiles determined, Williams committed no act of fraud or concealment with respect to the mortgage that would foreclose the possibility of a discharge pursuant to Section 727(a)(2) or (4)(A). Appellant has proffered neither evidence nor credible legal argument – beyond his own conclusory assertions – demonstrating that these findings are clearly erroneous. (See App. Br. at ECF pp. 9-10; see also ECF Docket Entry No. 6, Amended Statement of Issues on Appeal ("Statement of Issues") at ECF pp. 13-15.) The Court therefore affirms Judges Wiles' determinations.

With respect to the Daily News debt, Vaughn argued below that Williams' debt to the newspaper – which arose from an ad placed in or around 2009 – was still outstanding in light of the fact the collection action commenced by the Daily News against Williams' business remained open on the state court docket. At trial, Williams testified that she had paid the

balance of her debt to an attorney, who then paid the Daily News out of an escrow account. Judge Wiles' credited this testimony, citing several emails between Williams and a paralegal from the attorney's office verifying that the attorney had issued three checks to the Daily News since 2011 in order to satisfy the debt.  (See Wiles Op. at ECF pp. 76-77.)  Moreover, Judge Wiles found that the evidence submitted by Vaughn in support of his contention – the summons and complaint filed by the Daily News against Williams – demonstrated only that the lawsuit had been filed in 2011 and did not undermine Williams' testimony and evidence proving that the debt had been paid.  (See Wiles Op. at ECF p. 76.)  Once again, Appellant has offered no evidence nor argument demonstrating that Judge Wiles' findings in this regard were clearly erroneous and, therefore, the Court affirms Judge Wiles' determinations.  (See App. Br. at ECF pp. 9-10; see also Statement of Issues at ECF pp. 13-15.)

Finally, with respect to Williams' eviction from unit 2F, Vaughn claimed that Williams testified falsely at the Bankruptcy Code Section 341 meeting of creditors that she had vacated the space due to landlord harassment when she was actually evicted for non-payment of rent.  At trial, Williams testified that she believed that certain disruptions to her business, including problems with her telephone lines, were being caused by employees of her landlord, who was trying to sell the building at the time.  (See id. at ECF pp. 77.)  She also testified and presented evidence concerning the stipulation of settlement in which she agreed to vacate unit 2F, as well as the mold inspection that was commissioned on the apartment and her filing of a damages action against her landlord.  (See id.)  Judge Wiles credited Williams' testimony, finding that she believed that her business was being interfered with and, therefore, that she did not provide false information to her creditors.  (Id.)  Vaughn has again offered no evidence or argument demonstrating that Judge Wiles' findings were clearly erroneous and the Court

declines to disturb those findings upon review. (See App. Br. at ECF pp. 9-10; see also Statement of Issues at ECF pp. 13-15.)

Vaughn has demonstrated no clear error in Judge Wiles' factual findings with respect to these matters. Furthermore, Judge Wiles properly applied the controlling law to the facts on the record. Accordingly, the Court affirms Judge Wiles' determination that Williams was entitled to a discharge under Bankruptcy Code § 727.[6]

### B. Determination of Dischargeability Pursuant to Bankruptcy Code Section 523(a)

Vaughn also asserts that Judge Wiles was mistaken in granting Williams a discharge of her debt "notwithstanding the Appellee's past false pretense, false misrepresentation and actual fraud pursuant to § 523 of the bankruptcy code." (See App. Br. at ECF p. 9 (emphasis in original).) In his May 1, 2015, adversary proceeding Complaint, Vaughn sought a determination, pursuant to Sections 523(a)(2) and (6) of the Bankruptcy Code, of the dischargeability of the debt owed to him. (See Docket Entry No. 16 at ECF p. 13 ¶ 5.) Section 523(a)(2) of the Bankruptcy Code provides that:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>     (A) false pretenses, a false representation, or actual fraud,

---

[6] The Court also affirms Judge Wiles' conclusions with respect to Vaughn's claims under Section 707(b) of the Bankruptcy Code, which Judge Wiles indicates were withdrawn at trial. (See Wiles Op. at ECF pp. 73-74.) Vaughn disputes this determination in his Statement of Issues. (See Statement of Issues at ECF pp. 12-13.) Even if Vaughn did not withdraw his claim under Section 707(b), however, he has failed to demonstrate any error in Judge Wiles' determination that Vaughn failed to establish that Williams' debts were primarily consumer debts and, therefore, that Section 707(b) is inapplicable. (See Wiles Op. at ECF pp. 73-74.)

>>other than a statement respecting the debtor's or an insider's financial condition;
>>
>>(B) use of a statement in writing –
>>>(i) that is materially false;
>>>(ii) respecting the debtor's or an insider's financial condition;
>>>(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>>(iv) that the debtor caused to be made or published with intent to deceive.

See 11 U.S.C.S. 523(a)(2) (LexisNexis 2015). Judge Wiles found, and Vaughn does not contest, that Vaughn never referenced any writing used by Williams to obtain the loan and, therefore, only Section 523(A)(2)(A) is applicable. (See Wiles Op. at ECF p. 66.)

"To establish that a debt is not subject to discharge under [§ 523(a)(2)(A)], a creditor must prove five elements: (1) the debtor made a misrepresentation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with intent to deceive the creditor; (4) the creditor relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result." See Kuper v. Spar (In re Spar), 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994). "Exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." See National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996) (internal quotation marks and citations omitted). Furthermore, "[t]he burden of proof in a nondischargeability proceeding is on the creditor seeking an exception to discharge to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions enumerated in Bankruptcy Code § 523(a)." Syncom Industries, Inc. v. Wood (In re Wood), 488 B.R. 265, 273 (Bankr. S.D.N.Y. 2013) (citing Grogan

v. Garner, 498 U.S. 279, 286 (1991)).  If the creditor establishes a prima facie case under § 523(a)(2)(A), the burden shifts to the debtor to present a defense.  Spar, 176 B.R. at 326.

With respect to the first element of this test, the misrepresentation must "encompass statements that falsely purport to depict current or past facts."  Spar, 176 B.R. at 327 (quoting In Re Roeder, 61 B.R. 179, 191 (Bankr. W.D. Ky. 1986)).  "Representations as to opinion, expectation or declarations of intention do not relate to existing fact and are not actionable."  Spar, 176 B.R. at 327.  However, "[w]hen, at the time a representation is made, the debtor has no intention of performing as promised, a debtor's misrepresentation of his intentions will constitute a false representation under Code § 523(a)(2)(A)."[7]  Spar, 176 B.R. at 327.  Courts must also bear in mind that "fraudulent intent cannot be presumed.  The permissible inference will be negated where the debtor comes forward with some evidence that he did not intend to deceive the plaintiff."  Id. at 328.  As the language of § 523(a)(2)(A) makes clear, the provision does not apply to representations respecting a debtor's own financial condition.  See 11 U.S.C. § 523(a)(2)(A).

Judge Wiles determined below that, although Vaughn referenced several purported misrepresentations made by Williams in his Complaint, only three of those alleged misrepresentations were made prior to, or at the time of, the loan agreement.  (See Wiles Op. at ECF p. 68.)  Vaughn has not asserted that this finding is clearly erroneous.  Because the exceptions to discharge enumerated in § 532(a)(2) apply only to the extent that a loan was obtained by false representations or fraud (see 11 U.S.C. § 523(a)(2)), Judge Wiles correctly held that only the three alleged misrepresentations made prior to, or at the time of, the loan are

---

[7]   An intent not to perform may be inferred where the promisor knew or believed that she would be financially unable to perform.  See Spar, 176 B.R. at 327.

relevant to the analysis under that provision.

As an initial matter, Vaughn alleged that Williams lied about her intent to repay the loan.  (See Wiles Op. at ECF p. 68; see generally Complaint.)  Judge Wiles credited Williams' testimony that, when she entered into the loan, she intended to pay Vaughn back.  In support of this finding, Judge Wiles cited the fact that Williams made an initial payment of $1,000 to Vaughn, and that she had offered to pay the remaining balance in $200 installments.  (See id.)  Moreover, Williams initially filed her case under chapter 13 and testified that she began to make monthly payments under a chapter 13 plan before she converted her case to one under chapter 7.  (See Wiles Op. at ECF pp. 68-69.)  Vaughn has failed to demonstrate that these findings are clearly erroneous, offering only his own conclusory assertions as to Williams' credibility and intent to defraud and his argument that Judge Wiles improperly evaluated these characteristics.  No specific evidence contravening Judge Wiles' findings of fact, nor legal argument undermining his conclusions of law, have been proffered by Williams in his submissions to the Court.  (See App. Br. at ECF pp. 9-10; see also Statement of Issues at ECF pp. 8-12.)  Judge Wiles therefore made no clear error in concluding that these facts supported a finding that Williams fully intended to repay the loan.  His legal conclusion that she did not enter into the loan agreement with any fraudulent intent was sound.

Secondly, Vaughn alleged in his Complaint that Williams misled him by informing him that, pursuant to a "divorce settlement stipulation[,] she was to receive monetary benefits derived from any rental income regarding a property located [in New Jersey.]"  (See Complaint, Docket Entry No. 16 at ECF p. 16 ¶ 10.)  However, Judge Wiles credited Williams' testimony at trial that she never made any such representations to Vaughn prior to entering into the loan agreement and noted that Vaughn was unable to identify any "precise representation of

fact in this regard that he allegedly relied upon in making the loan." (See Wiles Op. at ECF p. 69.) Vaughn has pointed to no facts nor argument demonstrating that Judge Wiles' finding is clearly erroneous. (See App. Br. at ECF pp. 9-10; see also Statement of Issues at ECF pp. 8-12.)

Finally, Vaughn alleged that Williams misled him with respect to a "substantial loan application" that she had applied for, which would have been more than enough to repay his loan to her. (See Complaint, Docket Entry No. 16 at ECF p. 16 ¶ 12.) At trial, Williams testified that, prior to borrowing any money from Vaughn, she had applied for a business loan for which she believed she was qualified. (See Wiles Op. at ECF p. 69.) She further testified that she had been working on improving her credit in order to obtain the loan and expand her business and she testified to her belief that she would receive the loan, as well as her surprise when she was denied. (See id.) Based on this testimony, Judge Wiles determined that there was no evidence that Williams misrepresented the facts: she had made an application, as she told Vaughn, for a loan she believed she would receive. (See id.) Once again, Vaughn has failed to demonstrate that any of Judge Wiles' findings in this respect were clearly erroneous. (See App. Br. at ECF pp. 9-10; see also Statement of Issues at ECF pp. 8-12.) Applying these facts to the law, Vaughn cannot establish that Williams made a "misrepresentation" within the meaning of Section 523(a)(2) that would provide a basis for denying the discharge of her debt. Thus, the Court affirms Judge Wiles' finding that the evidence did not establish grounds to deny Williams a discharge of her debt under Section 523(a)(2).

Judge Wiles also read the Complaint to assert a claim under Section 523(a)(6) of the Bankruptcy Code, which provides that "a discharge . . . does not discharge an individual debtor from any debt -- (6) for willful and malicious injury by the debtor to another entity or to

the property of another entity." See 11 U.S.C.S. § 523(a)(6) (LexisNexis 2015). "The section's word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely . . . a deliberate or intentional act that leads to injury." See Kawaauhau v. Geiger, 523 U.S. 57 (1998). This language is read to impose a requirement "that the actor intend the consequences of an act, not simply the act itself." Id. at 58 (emphasis in original). The Second Circuit has recognized that "[a]s used in section 523(a)(6), malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." In re Stelluti, 94 F.3d 84, 87-88 (2d Cir. 1996) (quoting In re Walker, 48 F.3d 1161, 1164 (11th Cir. 1995)). Generally, a breach of contract claim does not satisfy this standard absent some independent tortious conduct. See In re Mitchell, 227 B.R. 45, 52 (Bankr. S.D.N.Y. 1998).

In his Complaint, Vaughn alleges that Williams engaged in willfully malicious conduct by closing her account with Chase bank despite the fact that she had sufficient funds in the account from which Vaughn might have been able to withdraw the money he was owed. (See Complaint, Docket Entry No. 16 at ECF p. 20 ¶¶ 34-36.) Upon reviewing the evidence, however, Judge Wiles determined that Vaughn had failed to establish that Williams engaged in any "willful" or "malicious" conduct that would justify a limitation of the discharge under Section 523(a)(6). (See Wiles Op. at ECF pp. 70-71.) With respect to the funds putatively available for withdrawal in her Chase account, Judge Wiles accepted Williams' testimony that "she had high expenses; she was behind in payments; she had to pay rent on the two units, her apartment and her salon, as she was trying to maintain her business and keep a roof over her head; and that all the money that went into the bank account flowed out to maintain her declining business and her apartment." (Wiles Op. at ECF p. 71.) Judge Wiles further credited Williams'

testimony that she closed her Chase account in light of fraudulent activities occurring in the account. (Wiles Op. at ECF p. 71.)

Judge Wiles also made a number of determinations with respect to Williams' financial status, including finding that Williams could not afford her apartment and was not regularly paying rent, that she was making no income from her business and that income Vaughn was attributing to her actually constituted pre-expense business earnings, and that funds held in a PNC bank account were derived from Williams' subletting her apartment while she slept in her salon and were earmarked for rent payments. (See Wiles Op. at ECF pp. 72.) On balance, Judge Wiles concluded that Williams had "testified credibly concerning her declining income" and that she "did not act with the willful or malicious intent that would be required to deny a discharge under section 523(a)(6)." (Wiles Op. at ECF p. 73.) Vaughn has once again failed to provide the Court with any indication, beyond his own conclusory statements regarding Williams' credibility, that any of Judge Wiles' determinations were clearly erroneous.[8] The Court thus finds no clear error in Judge Wiles' factual conclusions with respect to Vaughn's Section 523(a)(6) claim. Applying the law to these facts, the Court finds that Judge Wiles was correct in concluding that Williams did not engage in any willfully malicious conduct that would warrant denial of a discharge under Section 523(a)(6).

In light of the fact that Vaughn has identified no clear error in Judge Wiles' factual findings with respect to Vaughn's Section 523(a) claims, as well as this Court's determination that Judge Wiles correctly applied the controlling law to the facts on the record,

---

[8] Judge Wiles concluded that Vaughn's allegations of proof established only that Williams failed to repay him and thereby breached her contract which, in the absence of independent tortious conduct, does not trigger Section 523(a)(6). See In re Mitchell, 227 B.R. at 52.

the Court affirms Judge Wiles' ruling that Section 523(a) of the Bankruptcy Code does not limit Williams' entitlement to a discharge of her debt.

### C.  Judge Wiles' Evidentiary Determinations

Appellant Vaughn appears to premise a substantial portion of his argument on appeal on Judge Wiles' decision not to accept certain pieces of evidence into the record or require that Williams produce certain pieces of evidence.  Specifically, Vaughn takes issue with Judge Wiles' decision not to enter into evidence "a copy of [Vaughn's] narrated testimony given under oath in open court."  (See App. Br. at ECF p. 6.)  Vaughn further accuses Judge Wiles of abusing his discretion in denying Vaughn the "right to review the Appellee's Income Affidavits and the missing 1040 U.S. Individual Tax Return for the year 2014."  (App. Br. at ECF pp. 9-10.)  Williams highlights the fact that chapter 7 trustee Deborah J. Piazza requested these documents at the November 5, 2014, creditor's meeting (see App. Br. at ECF pp. 7-8), claiming that Judge Wiles' failure to direct Williams to produce these documents deprived him of "the opportunity to present credible evidence" "to refute the Appellee's sworn testimony as a false oath" (id. at ECF p. 9) and that the Judge's decision not to do so was "an unfair act stemming from prejudice" indicating that Judge Wiles' decision "was obviously predetermined."  (Id. at ECF pp. 7-8.)

"A bankruptcy court's evidentiary rulings are reviewed for an abuse of discretion." In re Worldcom, Inc., 357 B.R. 223, 227 (S.D.N.Y. 2006) (citing Manley v. AmBase Corp., 337 F.3d 237, 247 (2d Cir. 2003)).  Here, Williams has not demonstrated that Judge Wiles' evidentiary rulings constitute an abuse of discretion.  It was surely no abuse of discretion to refuse Vaughn the opportunity to submit a transcript of his trial testimony; such a transcript would merely have duplicated the live testimony that Judge Wiles had previously heard.  With respect to Williams'

"missing" income affidavits and 1040 tax return, it was well within Judge Wiles' discretion not to require Williams to produce these documents. Vaughn appears to concede that Judge Wiles did indeed consider this request but based his decision not to require production of the documents on the fact that the chapter 7 trustee did not further press the issue with the Court. (See App. Br. at ECF p. 7.) It was fully within Judge Wiles' discretion to determine that these documents were not essential to the presentation of an accurate picture of Williams' financial condition, particularly in light of the fact that the chapter 7 trustee never "complained" to Judge Wiles about their absence. (See id.) Because Vaughn has proffered no evidence or argument supporting his contention that Judge Wiles' evidentiary rulings constituted an abuse of discretion, the Court finds that no basis exists for reversing any of those rulings on appeal.

### D. Judge Wiles' Credibility Determinations

The remainder of Vaughn's arguments appear to hinge on the general assertion that Judge Wiles improperly credited many aspects of Williams' testimony at trial, despite Williams' alleged character for untrustworthiness and paranoia. (See generally Statement of Issues at ECF pp. 1-5; App. Br. at ECF pp. 6, 9.) Vaughn contends that Williams testified falsely regarding, inter alia, the reason she sought the loan from Vaughn in the first place, the reason she was forced to vacate unit 2F, her intent to enter into a chapter 13 payment plan in good faith, her responsibility for the mortgage debt and right to rental income stemming from the New Jersey property and whether she was actually denied the business loan that she applied for. (See generally Statement of Issues.)

Under the clear error framework for review of factual findings on appeal, "'particularly strong deference [must be given] a [bankruptcy] court's finding based on credibility assessments of witnesses it has heard testify.'" See In re Pisculli, 426 B.R. 52, 29 (E.D.N.Y. 2010) (quoting In re Boyer, 328 F. App'x 711, 716 (2d Cir. 2009) (summary order) (alterations in

original); see also In re Gollomp, 198 B.R. 433, 436 (S.D.N.Y. 1996) ("Deference is given to the original fact finder because of that court's expertise and superior position to make determinations of credibility."). Beyond his conclusory assertions, Vaughn has offered no argument that effectively calls into question Judge Wiles' credibility determinations. Thus, to the extent Vaughn seeks reversal of Judge Wiles' decision granting Williams a discharge of her debt based on Judge Wiles' acceptance of Williams' testimony as credible, the Court must reject this argument.

CONCLUSION

In light of the foregoing, the Court affirms Judge Wiles' determinations that debtor Vickie Lynette Williams' debt to Appellant was properly dischargeable and that Williams was entitled to a discharge pursuant to 11 U.S.C. § 727. The Clerk of Court is respectfully requested to enter judgment affirming the Bankruptcy Court's July 15, 2015, Order and to close this case.

The Court certifies, pursuant to 28 U.S.C. 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: New York, New York
       March 21, 2016

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy mailed to:**
Mr. Nat Vaughn
175 West 90 Street, Apt. #20D
New York, NY 10024